O'BRIEN, Appellant, v. PERRY et al., Respondents.

1. On the third of October, 1807, one A. gave to the United States recorder of land titles a notice in writing to the effect that he claimed, as assignee of B., six hundred and thirty-nine acres of land situate at Mine à Breton, by virtue of "inhabitation and cultivation" thereof by said B. This claim was presented to the board of commissioners in 1807, but was not then acted upon. In 1811, the claim was again presented to the board and was rejected on the ground that B. claimed another tract of land by concession. In 1820 notice of the claim was filed in the land office at Jackson, Mo., and the land was marked out as reserved from sale on the plat on file in said office by red dotted lines. In 1825, Recorder Hunt, upon proof made before him by C. and D., who were the legal representatives of A. and B. as respected the whole tract claimed at Mine à Breton, issued certificates of confirmation to said C. and D. for two lots—one a village lot in Mine à Breton, and the other an outlot of said village containing about fourteen arpens. Both these lots were embraced in the tract of six hundred and thirty-nine acres as claimed before the recorder by A. On the 3d of De-

cember, 1833, C., who had acquired the interest of D., submitted said claim
for the said tract to the board of commissioners organized under the act of
Congress of July 9, 1832, and adduced testimony in its support. The board
took no action thereon. On the 7th of August, 1834, C., in consideration
of the privilege of preëmption granted by the third section of the act of
Congress of July 9, 1832, taken in connection with the supplementary act
of March 2, 1833, waived and relinquished to the United States, by deed
duly executed, all claim whatever to said tract of six hundred and thirty-
nine acres. The description in this deed of waiver and relinquishment em-
braced the whole tract including the village lot and outlot covered by
Hunt's certificates. At the date of this deed of relinquishment and waiver,
C. resided upon the village lot and cultivated the outlot for which Hunt's
certificate had been issued in 1825, but no portion of his improvements ex-
tended beyond the boundaries of these lots, except a part of a field, which
did extend beyond the lines of said outlot as afterwards surveyed by the
United States. After his said relinquishment and waiver and about the
1st of September, 1834, C. made application to the register of the land
office at Jackson, Mo., to enter said tract as a preëmptor under the third
section of the act of Congress of July 9, 1832. He was not then permitted
to make the entry because the public surveys were not then completed.
Afterwards, on the 26th of November, 1839, C. was permitted to and did
enter, as preëmptor under said act of Congress of July 9, 1832, in confor-
mity with the township and section lines, and their interferences with said
tract so relinquished to the United States, various portions thereof, among
others a fractional half quarter section in fractional section fifteen, township
thirty-seven north, range two east. In 1843, this entry was cancelled by
order of the commissioner of the general land office, concurred in by the
secretary of the treasury, on the ground that the third section of the act of
July 9, 1832, gave the right of preëmption to none but actual settlers and
housekeepers on the land sought to be entered; that C. did not bring him-
self within the provisions of said section, his residence on the village lot
and his actual possession and cultivation of the outlot not constituting him
an actual settler and housekeeper as to the whole tract claimed. After-
wards, in 1847, one E. entered said land as a preëmptor, and in 1854 obtained
a patent therefor from the United States. *Held*, in a suit for possession by
E. against C., that the claim of C., as the legal representative of B., to the
tract of six hundred and thirty-nine acres was a claim within the meaning
of the act of Congress of March 2, 1833; that C. was entitled, under the
third section of the act of Congress of July 9, 1832, to relinquish or waive
said claim in favor of the United States; that, having made such a waiver
or relinquishment, C. had a right, under said third section, to enter said
tract as a preëmptor irrespective of the question whether he was an actual
settler and housekeeper thereon or not; that the act of the executive offi-
cers of the United States in cancelling and annulling C.'s entry was void;
that his entry, notwithstanding such cancellation, was valid and binding
upon the United States and all persons claiming under the United States by
title subsequent, whether by patent or otherwise.

*Appeal from Washington Circuit Court.*

This was an action in the nature of an action of ejectment, commenced May 4, 1855, to recover possession of a tract of 58 54-100 acres, being the east fractional half of the south-east fractional quarter of fractional section fifteen, township thirty-seven north, range two east, in Washington county. To support his right to a recovery, the plaintiff introduced the evidence taken before the register and the receiver at the land office at Jackson, Mo., in support of his right to a preëmption; also the receipt of the receiver and the certificate of the register. All these were dated July 3, 1847. The plaintiff also adduced in evidence a patent dated May 4, 1854, to himself of the land thus preëmpted. Here the plaintiff closed.

The defendants then introduced in evidence against the objections of plaintiff a transcript from the office of United States recorder of land titles. This transcript contained the following: 1. A notice of claim given by John Perry, sr., to the recorder of land titles. This notice was dated October 3, 1807. In this notice Perry stated that he claimed " as assignee of Bazil Vallé six hundred and thirty-nine acres of land situate at Mine à Breton, in pursuance of the inhabitation and cultivation made on the said land by the said Vallé conformably to the laws of the United States made and provided," &c. 2. A deed from Vallé to John Perry, sr., conveying a tract of land described as follows: " All my right, title and claim to my settlement at said mines, to include the house in which I now live, together with my garden and the lot of ground heretofore improved by me, supposed to be ten acres, more or less, with an out-house annexed to said tenement," &c. This deed purported to be dated March 18, 1806. 3. Minutes of board of commissioners under act of Congress. These minutes were dated December 5, 1807. They showed that Perry appeared before the board and produced the above notice and deed and testimony showing that Vallé had possessed and cultivated said land from 1792 up

to the date of the deed to Perry.   The court did not act upon the claim.   4. Minutes of proceedings of commissioners, December 27, 1811.   The claim was again presented and the board decided that the claim "ought not to be granted because it appears Bazil Vallé claims another tract of land under concession."   5. Minutes of testimony in the form of affidavits submitted to the board of commissioners December 3, 1833, by John Perry as legal representative of Vallé. The board made no order and gave no opinion respecting the same.   6. A deed of relinquishment dated August 7, 1834, executed by John Perry and wife to the United States.   In this deed the claim of Vallé, the notice to the recorder, the deed from Vallé to John Perry, sr., a deed dated January 18, 1819, from John Perry, sr., to Wm. M. Perry and John Perry, a deed of release from the heirs of Wm. M. Perry to John Perry, dated December 7, 1825, were recited.   After these recitals the deed proceeds as follows : " do hereby—and in consideration of the privilege of preëmption intended to be conferred on us, the party claiming to hold said tract of land, by the provisions of the third section of the act of Congress approved on the 9th of July, 1832, entitled ' An act for the final adjustment of private land claims in Missouri,' and the supplementary act thereunto of March 2, 1833, entited ' An act supplemental to the act entitled an act for the final adjustment of land claims in Missouri'—forever waive, release, renounce, relinquish and surrender unto the United States of America all the right, title, interest and claim which we, the said John Perry and Eliza M., his wife, allege and assert or believe to have acquired, or had at any time alleged and asserted or belived to have acquired unto the tract above described."

M. Frissell, sworn as a witness, stated, against the objection of plaintiff, that he had seen a plat of a survey made by John Stewart, purporting to be made in 1806, of the tract of land claimed by John Perry under the notice filed with the recorder in 1807 ; that it included the tract in controversy, also the town lot upon which Perry lived ; that he, witness, had

made diligent search for said plat among the papers of John Perry and could not find it; that a store in which Perry kept many papers was destroyed by fire in 1843.

The defendants offered in evidence the report of the register and the receiver of the land office at Jackson, Mo., to the commissioner of the general land office. The report was dated September 16, 1842, and was made upon the claim of Perry to preëmption under the acts of Congress of July 9, 1832, and March 2, 1833. This report recited the following facts: the deed from Vallé; the presentation of the claim of Perry to the board of commissioners agreeably to a plat of survey made by John Stewart (which plat was mentioned in the report as accompanying it); the rejection of the claim by said board; that on the 16th of July, 1825, William and John Perry, claiming under said settlement right acquired of Bazil Vallé, had confirmed to them under the act of June 13, 1812, and May 26, 1824, by the recorder of land titles, a town lot and out-lot in the village of Mine à Breton, which lots were included in the original survey made by Stewart and upon which town lot the dwelling of said Perry is situated; that on the 2d December, 1820, notice of the claim of said Perry was filed in the land office and the land marked out as reserved from sale on the plat on file by red dotted lines; that on the 3d of December, 1833, John Perry, jr., again presented his claim and submitted further testimony to support it; that the board made no decision; that on the 7th of August, 1834, Perry relinquished to the United States in conformity to the plat of Stewart above mentioned; that on or about the 1st of September, 1834, Perry made application to the register to make his entry of said land, but was not permitted to do so because the public surveys were then incomplete; that soon after the completion of the survey, in June, 1836, Perry again made application to enter, but was informed by the land officers that the law by which the right to enter accrued had expired; that Perry then applied to the commissioner of the general land office, who, on the 28th of September, 1839, ordered the entry to be made provided the

officers at the land office at Jackson should be satisfied, from the proof submitted, that he (Perry) was entitled to the benefit of the law under which he claimed; that in pursuance of said order Perry was permitted, on the 26th of November, 1839, to enter; that he clearly established the fact that he was an actual housekeeper and cultivator upon the claim of Bazil Vallé as presented before the board of commissioners; that his dwelling-house and field in cultivation were situated upon the claim as surveyed by Stewart in 1806 and as reserved from sale upon the original plat in the land office. The register and receiver then enter upon an argument to show that Perry had a right of preëmption and that he made his application in time, and that his entry should not be cancelled. The plaintiff objected to the admission of this report on the ground that it was not competent to prove the facts recited in it. The court overruled the objection and admitted the report.

The defendants then introduced in evidence, against the objection of plaintiff, a certified abstract from the office of the register of the land office at Jackson, Mo. From this it appeared that on the 15th of November, 1839, Perry had entered the land in controversy as preëmptor under the act of Congress of July 9, 1832. Upon the face of the abstract the entry was marked as cancelled. Also a letter from the commissioner of the general land office to the register and receiver at the land office at Jackson, dated September 28, 1839. In this letter the commissioner states that if Perry made his application to enter as early as September, 1834, and if the entry had not been made only because of the want of the requisite survey, then Perry should be allowed to enter the same whenever the surveys were returned, if the officers should be satisfied from the proof that he was entitled to the benefit of the law.

The defendants then, without objection, introduced in evidence certificates of confirmation, issued by Recorder Hunt, under the act of May 26, 1824, to William M. Perry and John Perry as representatives of John Perry, sr., for a vil-

lage lot in the village of Mine à Breton and for an out-lot of
said village containing about fourteen arpens; also surveys
thereof by the United States approved April 17, 1847. It
was admitted that John Perry's residence, at the time of his
deed of waiver, and before that, and down to the time he left
the county of Washington, was on the town lot confirmed to
him under Vallé in 1825, and that no part of his improve-
ments extended over the line of his confirmation as surveyed,
except part of a field lot, which it was proven did extend
over the lines of the confirmed tract and on the tract which
he claimed by preëmption.

The defendants here closed. The plaintiff, in rebuttal, in-
troduced in evidence the opinion of the solicitor of the treas-
ury given to the commissioner of the general land office upon
the right of John Perry to a preëmption under the act of
Congress of July 9, 1832. This opinion was dated January
21, 1843, and was adverse to the claim of Perry. The deci-
sion of the commissioner of the general land office was also
introduced; also that of the secretary of the treasury. The
ground taken in these opinions and decisions was that the
third section of the act of July 9, 1822, gave the right of
preëmption only to actual settlers, being housekeepers, on the
land sought to be entered, and that Perry was not such set-
tler or housekeeper.

The court found the facts substantially as follows: That
John Perry, as assignee of Bazil Vallé, gave notice, October
3, 1847, to the recorder of land titles of his claim to six hun-
dred and thirty-nine acres of land situate at Mine à Breton,
in pursuance of the inhabitation and cultivation of said
Vallé; that on the 5th of December, 1807, the claim was
presented to the board of commissioners with evidence to
support it, but it was not acted upon; that on the 27th of
December, 1811, said claim was again presented and rejected
on the ground that it appeared that Vallé claimed another
tract under concession; that in 1825 William Perry, having
all the title conveyed by Bazil Vallé to John Perry, sr., ob-
tained certificates of confirmation from Recorder Hunt under

the act of May 26, 1824, for a village lot in Mine à Breton and for an out-lot of two by seven arpens; that on the 3d of December, 1833, John Perry appeared before the board of commissioners and presented his claim for six hundred and thirty-nine acres, and offered evidence in support thereof, but the board did not act thereon; that on the 7th of August, 1834, Perry executed a deed of relinquishment to the United States waiving his claim to a confirmation under Vallé; that John Perry's residence and house where he lived was situate within the boundary lines of the survey of the tract confirmed to him on the 16th of July, 1825; that John Perry, claiming the right of preëmption by virtue of his relinquishment and waiver, was permitted to enter as preëmptor at the land office at Jackson, on the 26th of November, 1839, the tract of land in controversy, which tract was within the boundary lines of the tract of land claimed by Perry and released by him under his deed of waiver; that the entry made by Perry was cancelled by the commissioner of the general land office on the 5th of May, 1843, on the ground that Perry's residence and house being on the land confirmed to him and not on the land he was permitted to enter, he was not entitled to enter said land as a preëmptor; that this decision was concurred in by the secretary of the treasury on the 3d of November, 1843; that on the 3d of July, 1847, the plaintiff in this cause applied at the land office in Jackson, Mo., and made proof of his right to a preëmption on the land in controversy in this suit, and was permitted to enter and did enter the same as a preëmptor, and received his duplicate receipt for the purchase money; that said entry was duly certified to the general land office; that on the 4th day of May, 1854, the land was patented to said John O'Brien; that the defendants are in possession of the land; that the register and receiver at the land office in Jackson made a report to the commissioner of the general land office in relation to the claim of said Perry; that the town lot and the fourteen arpent out-lot and the balance of the six hundred and thirty-nine acres were all connected and included

in a survey made by one Stewart in 1806 and prior to the confirmations in 1825. The court declared as a conclusion of law " that Perry, by virtue of his waiver and relinquishment of his claim as above, became entitled to a preëmption of the land in controversy and that the cancellation of his certificate of entry was an act contrary to law and void." The court gave judgment for defendants.

*Noell,* for appellant.

I. The plaintiff made out a clear title. The question is, have the defendants made a case sufficient in law to defeat the *prima facie* title of plaintiff. Perry's claim was not one of that class of claims provided for by the act of July 9, 1832. At the dates of the acts of July 9, 1832, and March 2, 1833, Perry had no "unconfirmed claim" that fell within the provisions of said acts. His claim had been confirmed in 1825. He could not make a claim afterwards by nullifying the confirmation and reconveying to the United States. Those acts did not embrace his claim. The board had no authority to examine it, pass upon it, or classify it. He could not have two confirmations, each based upon the same settlement. (19 How. 202 ; 16 How. 86.)

II. The claim was not reserved from sale by the act of July 9, 1832. No claims were reserved except those classified either in the first or second class. To be reserved after the act expired, it was necessary that it should be classed in the first class. Those not so classed are not reserved. Those waived are not reserved. If Perry's claim was reserved from sale, the act of July 9, 1832, together with Perry's waiver restored it to market. It gave him a preëmption if he brought himself within the provisions of the law as a housekeeper residing on the land, and upon failure to do so the land was open to entry by others. By the waiver all the benefits and privileges of the law of July 9, 1832, were wholly abandoned and gone, excepting the privilege of preëmption. He made his election to take the benefit of the preëmption privilege and on this privilege he rested his whole

case. There is no proof in this case that Perry ever presented to the land office at Jackson his proof of preëmption or his deed of relinquishment. The report of the officer to the commissioner is no legal evidence of that fact, and the court erred in admitting it. If Perry's claim was reserved, it was under the acts of 1811 and 1818, and according to the provisions of these acts Congress has disposed of the claim. It was confirmed in 1825. There was an interruption of reservation from sale from the 29th of May, 1829, to July 9, 1832. Unless Perry's claim was reserved by the act of 1832, it was not reserved at all. (15 How. 525.) There is no evidence in the case that the tract in controversy is embraced in Perry's claim as relinquished by him under the act of 1832. Mr. Frissell's statements do not prove this. Stewart's survey was not made until 1836. The commissioner of the general land office and the secretary of the treasury, in determining the validity of entries, preëmptions and other preliminary questions in reference to the disposal of the public domain, act as judicial officers to that extent, and may determine questions of fact upon evidence and questions of law upon the facts. Their decision, unless superinduced by such fraud as would constitute the fraudulent party a trustee for the party injured, is final. The decision upon Perry's claim concludes him. (18 Howard, 87.) Admitting, what no legal evidence establishes, that Perry's first application was made September, 1834, the act did not expire until some time in 1835. It is nowhere shown that from the first application in 1834 till the expiration of the law the surveys remained incomplete so as to prevent Perry's making the entry during the existence of the law. For all that appears, the surveys may have been completed within ten days after Perry's first application. The points made and decided in the case of Perry v. O'Hanlon, 11 Mo. 585, are not the same as those raised in this case. At that time the supreme court of the United States had not decided that all reservations from sale were removed from May 29, 1829, to July 9, 1832. (See Delaunier v. Emerson, 15 How. 525.) The

33—VOL. XXVIII.

court seems to have taken it for granted that this land was expressly reserved from sale by the act of July 9, 1832. Claims not classed are nowhere reserved. (See Stoddard v. Chambers, 8 How. 364.) The most extreme construction of the law in favor of claimants could not maintain a reservation longer than July 4, 1836. The sale to plaintiff was long subsequent to July 4, 1836. In Perry's case no plat accompanied the notice filed with the recorder in 1807. (See Menard's heirs v. Massey, 8 How. 293.) The defendants have failed to show the validity of Perry's entry in 1839 ; their whole defence must therefore fall. (18 How. 87.)

*Frissell* and *Gantt*, for respondents.

Scott, Judge, delivered the opinion of the court.

We regard this case as falling within the reasoning of that of Perry v. O'Hanlon, 11 Mo. 585. Indeed it is a part of the same transaction. The merits of the controversy are all on the side of the appellees. It is in vain that we seek in the record any reason why, after the claimant under whom the appellees hold had been permitted to prove up his preemption and enter the land in suit, as he had a right to do, the officers of the government should have taken it from him and granted it to the appellant on the same terms on which it had been previously conveyed. The United States, it is clear, derived no advantage from the transaction, nor would their interests have been affected by suffering the first entry to remain. Relying on the reasoning in the case to which reference has been made, we will only notice some of the objections which have been urged by the appellant against the correctness of the judgment of the court below.

We premise that the validity of the original claim under which the appellees derive title, and the question whether that claim would or would not have been confirmed, are not involved in this controversy, for it may be conceded that it would not have been confirmed without affecting the judgment to be given. The question is, whether it was a claim

O'Brien v. Perry.

within the meaning of the first section of the act of Congress of March 2, 1833, which was supplemental to the act for the final adjudgment of land claims in Missouri, approved July 9th, 1832.  If it was a claim under that act, then, as it was relinquished by the claimant in pursuance to the provisions of the third section of the last named act, it ceased to be subject to the disposition of the officers of the general government, and the land stood reserved for the benefit of him who made the relinquishment; and it is needless to inquire at this day whether the claim was a good one, for, as Congress could give away the land, it could dispose of it on terms.

That this was a claim within the meaning of the first section of the act of March 2, 1833, is evident from its face compared with the words of the law.  By this act, the commissioners, appointed under the act of July 5th, 1832, were authorized to consider, decide and report upon every claim to a donation of land in the state of Missouri held by virtue of settlement and cultivation.  Now the claim was for land in pursuance to inhabitation and cultivation made thereon conformably to the laws of the United States, and was dated on the 3d of October, 1807.  Whether the claim embraced the land in controversy was a question to be determined by the board of commissioners; and, as the claimant, in pursuance to law, waived an investigation of that question and all others, and submitted to pay for a preëmption and did pay for it, his right thereto could not afterwards be annulled by any act of the officers of the government.  This was a compromise between him and the government; and, after he had made a relinquishment of his right and paid the purchase money in pursuance to law, the act could not be revoked. Let it be borne in mind that the officers of the government, in annulling the entry, did not base the right to do so on the ground that it had not been made within the time prescribed by law, but because the claimant was not an actual settler. The officers of the United States had admitted that the preëmption had been proved up within the time contemplated by law.

From this view of the subject, it is manifest that there can be nothing in the objections that the claim was not within the first section of the act of July 9th, 1832; that it was unsurveyed; that it had been forfeited; was subject to entry and sale, and might have been sold like any other public land. Even if these objections could affect the claim, on what ground can the appellant avail himself of them, as he did not enter the land until after it had been entered and paid for by the claimant?

We do not feel the weight of the objection, that a portion of the claim was confirmed under the act of 26th May, 1824, by the recorder of land titles. If a portion of a tract of land is confirmed by the terms of a general law—for instance, a village lot, under the act of 13th June, 1812, being a portion of a larger tract, the whole of which is claimed, we will suppose, under the second section of the act of March 3, 1807, respecting claims to land in the territories of Orleans and Louisiana — what is there to prevent a party from prosecuting the remainder of his claim? If Congress will confirm a portion of a claim by one law, and afterwards confirms the rest of it by another law, why should not a party be allowed the benefit of both laws? It has never been considered that a claimant, by availing himself of a confirmation of a part of his tract under one law, thereby made an abandonment of the rest of it, so that he could not claim the benefit of a future law confirming it. In this connection, how unreasonable was it that the officers of the government should hold that, because the portion of the tract on which the claimant was settled was confirmed by one law, therefore he was no actual settler on the portion that was not confirmed; thus making two tracts out of one, because they were confirmed by different acts of Congress! But, as to the objection that the claimant was not an actual settler on the land, it is clear that the instructions contained in the second volume of the work entitled "Public Lands," printed in 1838, by the senate, (pages 749, 750,) show that a claimant, who relinquished his claim, was entitled to a preëmption under the act of

July 9, 1832, although he was not an actual settler. This is the correct interpretation of the act, independently of any instructions, as is obvious from its language.

We do not regard this case as falling within the influence of the principle, that where a patent for land is issued by the officers of the United States, the presumption is that it is valid and passes the legal title. This is well settled law; but the very case on which reliance is placed to support it (Winter v. Crommelin, 18 How. 87) gives the qualification of the rule, and maintains that this presumption may be rebutted by showing that the land is not subject to entry and grant. This case is clearly within the qualification of the principle, and presents the question—if one has a claim, and the law proposes to him, that, if he will relinquish it, he shall be entitled to a preëmption on the land claimed, and he accept the proposition, and afterwards the preëmption is allowed and the land entered—whether the entry can be cancelled. In such case, would not the bare relinquishment of the claim place the land beyond the control of the officers of the government so long as the claimant was ready and willing to comply with the terms of the compromise?

It has been before observed, that it was not considered material whether the claim had been reserved or not from sale by any act of Congress, as we deemed it sufficient if it was a claim at the date of the act of March 2, 1833. But in making this concession we did not intend to admit that the claim was of so little merit that it had never received so much consideration from the government as to be reserved from sale. The act of Congress of March 3, 1811, section 10, reserved all tracts of land the claim to which had been duly presented to the recorder of land titles; and the act of February 17, 1818, establishing additional land offices in the territory of Missouri, continued this reservation. In pursuance to instructions framed under this act by the secretary of the treasury, the claim in this case was marked as reserved from sale on the books of the register and receiver at Jackson, in this state. Affirmed; Judge Napton concurring. Judge Richardson gave no opinion.